# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
**No. 17-1800V**
**Filed: August 9, 2019**
UNPUBLISHED

MIGUEL GOMEZ,

                Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                Respondent.

Special Processing Unit (SPU);
Attorneys' Fees and Costs;
Reasonable Basis

*Shealene Priscilla Mancuso, Muller Brazil, LLP, Dresher, PA, for petitioner.*
*Sarah Christina Duncan, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Dorsey,** Chief Special Master:

On November 16, 2017, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.,*[2] (the "Vaccine Act"). Petitioner alleged that he suffered an injury to his left shoulder as a result of an influenza vaccination he received in December of 2014. Petition at 1 (ECF No. 1).

On June 13, 2018, petitioner filed a motion to dismiss the case, stating that an investigation had determined that he would be unable to prove entitlement to

---

[1] The undersigned intends to post this decision on the United States Court of Federal Claims' website. **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

compensation (ECF No. 18).  On June 25, 2018, the undersigned issued a decision dismissing the case for insufficient proof (ECF No. 19).  Judgment was entered on July 27, 2018 (ECF No. 21).

On January 14, 2019, petitioner filed a motion seeking attorneys' fees and costs (ECF No. 24).  On March 1, 2019, respondent filed a response in opposition, asserting that there was not a reasonable basis for the filing of the petition and thus petitioner was not entitled to fees and costs (ECF No. 26).  Petitioner filed a reply on March 10, 2019 (ECF No. 27).  This matter is now ripe for adjudication.

## I.    Relevant Procedural History

In his initial petition, filed on November 16, 2017, petitioner asserted an injury caused by an influenza vaccination "received in December of 2014."  Petition, filed Nov. 16, 2017 (ECF No. 1).  Along with the petition, petitioner filed medical records as Exhibits 1 and 2 and an affidavit as Exhibit 3 (ECF Nos. 1-4 through 1-8).

On November 17, 2017, petitioner filed a motion for a subpoena to the Sacramento Veterans' Administration ("VA") Medical Center "for complete detailed vaccination, including influenza vaccination administration, specifically reflecting the location of administration, whether the vaccine was given intramuscularly, the lot number and operative report from November 1, 2014 to present."  Petitioner's Motion for Subpoena, filed Nov. 17, 2017 (ECF No. 6).  The subpoena motion was granted the same day (ECF No. 7).  After two extension motions were granted, on March 2, 2018 petitioner filed Exhibit 4, a vaccination record, and an amended petition asserting an injury for an October 3, 2014 flu vaccination (ECF Nos. 14-15).

A status conference was held on April 20, 2018 with counsel for both parties and the OSM staff attorney managing the case on behalf of the undersigned.  During the conference, petitioner's counsel stated that petitioner intended to withdraw the claim based on information that became known after the initial filing of the petition. Scheduling Order, issued April 20, 2018 (ECF No. 16).  Petitioner indicated an intent to withdraw the claim within 45 days.  *Id.*

On June 13, 2018, petitioner filed a motion for a decision dismissing the petition. Petitioner's Motion for a Decision Dismissing his Petition, filed June 13, 2018 (ECF No. 18).  Petitioner stated, "An investigation of the facts and science supporting his case have demonstrated to Petitioner that he will be unable to prove that he is entitled to compensation in the Vaccine Program."  *Id.* at 1.  Thus, petitioner moved for a decision dismissing his case.  *Id.*

On June 25, 2018, the undersigned issued a decision denying petitioner's claim and dismissing the case for insufficient proof.  Dismissal Decision, issued June 25, 2018 (ECF No. 19).  Judgment was entered on July 27, 2018 (ECF No. 21).

On January 14, 2019, petitioner filed a motion seeking attorneys' fees (ECF No. 24). Petitioner requests attorneys' fees in the amount of $9,647.50 and attorneys' costs in the amount of $450.00, for a total of $10,097.50. *Id.* In compliance with General Order #9, petitioner filed a signed statement indicating that petitioner incurred no out-of-pocket expenses (ECF No. 18-1). On March 1, 2019, respondent filed a response in opposition asserting that the motion for fees and costs should be denied due to a lack of reasonable basis for the claim (ECF No. 26). Petitioner filed a reply on March 10, 2019 (ECF No. 27). In the reply, petitioner added a request for $1,100.00 in additional attorneys' fees for researching and preparing the reply, making the total request $11,197.50. *Id.*

## II.     Relevant Medical History

While the undersigned has reviewed the entire record in this case, this section summarizes only the records relevant to analyzing whether there was a reasonable basis for filing the petition in this case.

On October 3, 2014, petitioner received an influenza ("flu") vaccination at the Mare Island VA Clinic. Petitioner's Exhibit ("Pet. Ex.") 2 at 109; Pet. Ex. 4 at 1. On the same day, he was seen for a dental procedure. Pet. Ex. 1 at 271-72.

On October 23, 2014, petitioner reported to his then-primary care physician, Dr. Philip Eulie. Pet. Ex. 1 at 266-68. He complained of neuropathy in his lower extremities, burning right abdominal pain, dizziness and electrical shocks throughout his body "and a multitude of other complaints." *Id.* at 266. Dr. Eulie's history indicates that petitioner reported that he "recently planted 145 [trees]," peaches, cherries, plum, and apricots. *Id.* Dr. Eulie noted in petitioner's history that "after digging 3 2x3 foot holes and planting 3 trees, he gets dyspneic"[3] and dizzy. *Id.* Dr. Eulie's physical examination indicates that he checked petitioner's heart, lungs and breathing. *Id.* An EKG was done and showed a normal sinus rhythm. *Id.* at 267. Dr. Eulie reviewed recent laboratory studies, radiologic studies, progress notes, and consults. *Id.* Dr. Eulie's impression included exertional symptoms, diabetes mellitus, hyperlipidemia, hypertension, chronic kidney disease, peripheral sensory neuropathy, and a history of colon polyps. *Id.* The record contains no indication that petitioner reported shoulder problems or that his shoulder was examined.

Between October 23, 2014 and June 2, 2015, petitioner was seen numerous times for dental care (December 1, 2014, Pet. Ex. 1 at 265, and March 19, 2015, Pet. Ex. 1 at 251-53), dermatology care (January 28, 2015, Pet. Ex. 1 at 263-64, February 4, 2015, *Id.* at 260-61, and February 25, 2015, *Id.* at 254), and vision care (February 6,

---

[3] Dyspnea is breathlessness, shortness of breath, difficult or labored respiration. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 582 (32nd ed. 2012).

2015, Pet. Ex. 1 at 255-60).  There is no record of any medical care between March 19, 2015 and June 2, 2015.[4]  *See generally* Pet. Exs. 1, 2.

On June 2, 2015, petitioner was seen by Dr. Eulie.  Pet. Ex. 1 at 248-50.  He reported left shoulder pain for which he wanted a steroid shot and other issues.  *Id.* at 248.  The record does not indicate when the shoulder pain began.  *Id.*  On examination, Dr. Eulie noted impingement signs in petitioner's left shoulder.  *Id.* at 249.  Dr. Eulie's impression was "probably rotator Cuff Tendonitis."  *Id.*  Dr. Eulie recommended physical therapy, which petitioner declined.  *Id.*  The record indicates that Dr. Eulie told petitioner that his present glycemic control was a contraindication for a steroid shot.  *Id.*  Petitioner was directed to "[f]ollow up in 9 months in Mar 2016, sooner prn [as needed]."  *Id.* at 250.

On September 22, 2015, petitioner was seen by Dr. Eulie reporting discharge from his ears.  Pet. Ex. 1 at 238.  Petitioner also complained about his left shoulder and requested a steroid shot.  *Id.*  The record does not indicate when the shoulder pain began and does not indicate that petitioner's shoulder was examined.  *Id.*  Dr. Eulie again indicated that poor glycemic control was a contraindication for a steroid shot and offered physical therapy, which was declined.  *Id.* at 239.

On November 12, 2015, petitioner reported to Dr. Jaeho Lee for left shoulder pain for the past 11 months.  Pet. Ex. 1 at 234-35.  Petitioner reported that it "started after a flu shot in Dec. 2014" and reported that it began at the injection site.  *Id.*  Petitioner reported that he had been seeing a non-VA provider for "acupuncture and cupping," which had not helped.  *Id.* at 235.  On physical examination, Dr. Lee noted reduced range of motion and strength and positive Neer's and Hawkin's impingement signs.  *Id.* at 236.  Dr. Lee's impression was rotator cuff tendonitis with impingement.  *Id.* at 236.  Dr. Lee's notes indicate that physical therapy would be worthwhile but that petitioner did not want to do physical therapy.  *Id.*  Dr. Lee took a shoulder x-ray and referred petitioner for an orthopedic consult.  *Id.*

On November 24, 2015, petitioner reported to orthopedist Dr. Dorrit Ahbel for left shoulder and arm pain.  Pet. Ex. 1 at 230-232.  He reported that he "sees sev[eral] outside providers for care for the L arm and shoulder pain."  *Id.* at 231.  He complained of pain in his left shoulder and that he had lost active range of motion in his shoulder.  *Id.*  He reported intermittent numbness in his left arm.  *Id.*  Dr. Ahbel found that petitioner's shoulder range of motion was limited.  *Id.* at 232.  Dr. Ahbel's impression was left shoulder impingement syndrome with calcific tendonitis, left wrist stiffness, and diabetes under poor control.  *Id.*  Dr. Ahbel ordered an MRI and administered a subacromial injection.  *Id.*  Dr. Ahbel's records state, "Watch bl[ood] glu[cose] for nex

---

[4] Petitioner's medical records indicate that petitioner had labs drawn on May 26, 2015.  *See, e.g.*, Pet. Ex. 2 at 41-42, 48-49.  There is no record of an office visit on that date and the undersigned determines this was likely done in preparation for petitioner's upcoming June 2, 2015 appointment with Dr. Eulie.

sev[eral] days. If shoulder surgery an option, pt will require improved control of DM [diabetes mellitus] before the procedure." *Id.*

Dr. Ahbel ordered cervical spine x-rays, which were done on November 24, 2015. Pet. Ex. 1 at 43. The record lists the reason for the study as "L arm pain and numbness for several mos" and in the clinical history states "Pt [patient] attributes this to flu shot Dec 2014." *Id.*

On December 3, 2015, petitioner underwent a physical therapy evaluation. Pet. Ex. 1 at 228-30. The record lists onset as "1 YR." *Id.* at 229. For precipitating events/injury/change in routine, the record indicates "NO KNOWN SPECIFIC INJURY BUT SAYS HE GOT A FLU SHOT WHICH 'HIT THE BONE' – FEELS THIS CAUSED THE PAIN – SAYS IT GRADUALLY GOT WORSE AND WORSE." *Id.* Petitioner reported that he felt the flu shot had caused the injury and that it had "TAKEN A YR TO GET REFERRED TO P.T." *Id.* at 230.

On January 6, 2016, petitioner was seen by orthopedist Dr. James Moitoza and reported severe unremitting left shoulder pain. Pet. Ex. 1 at 226-28. Dr. Moitoza's impression was left shoulder adhesive capsulitis, diabetic type. *Id.* at 227. Dr. Moitoza explained, "[t]he patient's pain is mostly cause[d] by restricted G-H [gleno-humeral, or shoulder] joint motion and adhesive capsulitis. in diabetics, the capsule can be thickened and very difficult to treat." *Id.* Dr. Moitoza referred petitioner for an MRI, administered an intra-articular injection, and directed petitioner to continue with home exercises for his shoulder. *Id.* Dr. Moitoza added, "If no improvement, may have to consider arthroscopic release of adhesions/capsulotomy with MUA [manipulation under anesthesia]. Would NOT repair RCT [rotator cuff tear] then, PROM [passive range of motion] first priority." *Id.*

On May 11, 2016, petitioner was seen by Dr. Moitoza for re-evaluation of his left shoulder. Pet. Ex. 1 at 207-10. Dr. Moitoza noted that petitioner had an MRI and that he "would need surgical release of his severe diabetic type adhesive capsulitis." Pet. Ex. 1 at 207. After reviewing the MRI results, Dr. Moitoza's impression remained left shoulder adhesive capsulitis, diabetic type. *Id.* at 210.

On August 5, 2016, petitioner was seen by orthopedic surgeon Dr. Albi Qeli. Pet. Ex. 1 at 182. Petitioner reported left shoulder pain which he correlated with a flu shot and reported a duration of 20 months. *Id.* Dr. Qeli assessed petitioner with left shoulder adhesive capsulitis and left shoulder calcific tendinitis. *Id.* at 184. Dr. Qeli indicated that "manipulation under anesthesia, followed by arthroscopic debridement of the joint and subacromial space is reasonable." *Id.*

Although surgical records were not filed, entries in the VA medical records indicate that petitioner underwent surgery. *See* Pet. Ex. 2 at 111 (record of December 13, 2016 examination with Dr. Qeli noting that petitioner was being seen for a follow up

of "left shoulder, s/p [status post] arthroscopy, MUA, LOA, debridement 10/28/16" and assessing that "[s]urgical intervention seems to have been successful").

### III. The Parties' Arguments

Respondent argues that "petitioner has failed to establish a reasonable basis for his claim.  Therefore, petitioner is not entitled to receive a discretionary attorneys' fees and costs award."  Respondent's Opposition to Petitioner's Application for Attorneys' Fees, filed March 1, 2019 (ECF No. 26), at 1.

Respondent asserts that the Vaccine Act permits a special master to make a discretionary award of attorneys' fees and costs to an unsuccessful petitioner if the petition was brought in good faith with a reasonable basis.  *Id.* at 7.  However, respondent argues that if the good faith and reasonable basis criteria are not met, a special master lacks authority to award attorneys' fees and costs.  *Id.* at 8.

Respondent asserts that "petitioner has failed to establish a reasonable basis for his claim, and he is legally precluded from receiving a discretionary award of attorneys' fees and costs."  *Id.* at 8.  Respondent asserts that to have a reasonable basis, a claim must be supported by medical records or medical opinion and that an unsupported assertion that a vaccine caused an injury is insufficient.  *Id.*

Respondent asserts that "there is no objective evidence supporting the required evidence of petitioner's claim.  The medical records reveal that petitioner first complained of shoulder pain more than eight months after vaccination, after interacting with VA medical providers on eight separate occasions with no reports or evidence of shoulder pain."  *Id.* at 9-10.  Respondent notes that petitioner visited his primary care physician on October 23, 2014, weeks after his vaccination, and reported that he had recently planted 145 trees which required the digging of 2x3 foot holes.  *Id.* at 10.

Respondent asserts that petitioner "did not link his shoulder pain to vaccination until November 12, 2015, more than 13 months after vaccination, at which point he reported pain for 11 months after a December 2014 vaccination."  *Id.*  Respondent acknowledges that on several occasions petitioner asserted that his shoulder pain began after a flu vaccination, but "none of petitioner's medical providers corroborated petitioner's claims. In fact, several of petitioner's medical providers  opined that petitioner's left shoulder pain was related to his DM [diabetes mellitus]."  *Id.*

Respondent further asserts that attorneys are expected to conduct a reasonable pre-filing investigation of the factual basis for the claim and that had petitioner's attorney done so, "counsel should have recognized that the onset of petitioner's alleged vaccine-induced shoulder pain occurred months after vaccination and that petitioner's physicians attributed that pain to preexisting DM [diabetes mellitus]. Thus, counsel should have been aware that there was no objective support for the claims made in the petition."  *Id.* at 10-11.

In his reply, petitioner notes that the day after filing the petition, he filed a motion for a subpoena to obtain a detailed vaccine administration record from the Sacramento VA Medical Center. Petitioner's Reply to Respondent's Response to Petitioner's Motion for Attorneys' Fees and Costs, filed March 10, 2019, at 1 (ECF No. 27). Petitioner states that on March 2, 2018, he filed his vaccination record and an amended petition and that during an April 20, 2018 status conference, petitioner's counsel indicated an intent to withdraw the claim "based on information that became known to her after the initial filing of the petition." *Id.* at 2. Petitioner notes that he subsequently moved to dismiss his petition and the claim was dismissed. *Id.*

Petitioner asserts that he had a reasonable basis for his claim "because [he] filed proof of vaccination and medical records demonstrating a post-vaccination injury." *Id.* at 4. Petitioner states that "based on the fact that Petitioner filed medical records to support a post-vaccination injury, the attorneys' conduct, and the looming statute of limitations as counsel understood it at the time of the filing of his petition as December of 2017," the court should find a reasonable basis for the claim and award attorneys' fees. *Id.* at 5-6. Petitioner asserts that it was not "until after receipt of [petitioner's] vaccination record that Petitioner's counsel became aware that he would 'be unable to prove that he is entitled to compensation in the Vaccine Program.'" *Id.* at 9.

Petitioner asserts that the supporting medical records filed with the petition support that petitioner received an influenza vaccine, a covered vaccine. *Id.* at 6. Petitioner asserts that the medical records establish that petitioner reported to Dr. Jaeho Lee on November 12, 2015 that the pain began 11 months earlier after he received the flu shot in December of 2014. *Id.* Petitioner states that following receipt and review of these records, "counsel for Petitioner had formed a view of how Petitioner's left shoulder injury could fit within the framework of the Vaccine Program." *Id.* Petitioner's counsel does not explain this view.

Petitioner's counsel asserts that the "reasonable basis standard should be flexible enough to allow special masters and judges to consider other factors – such as the conduct of the attorney or a pending statute of limitations deadline – in addition to the strength of the evidence to support a Vaccine Act claim." *Id.* at 7.

Petitioner asserts that billing records establish that "Petitioner contacted counsel on August 28, 2017, approximately three (3) months prior to the running of the statute of limitations *as counsel understood it at the time* of filing of his petition as December of 2017." *Id.* at 9 (emphasis added). Petitioner asserts that he "quickly obtained and reviewed the medical records which demonstrated that Petitioner received the influenza vaccination in December of 2014 and suffered an adverse reaction thereafter." *Id.* Petitioner again cites a "looming statute of limitations" and "unsuccessful efforts to obtain his vaccination record from the VA Medical Center." *Id.* at 9.

7

IV.     **Analysis of Reasonable Basis and Good Faith**

A.     **Legal Standards**

The Vaccine Act provides that reasonable attorneys' fees and costs may be awarded even in cases determined not to be eligible for compensation "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Vaccine Act § 15(e)(1). "[A] special master's decision whether to award or deny attorneys' fees and costs to unsuccessful petitioners is discretionary." *Chuisano v. United States*, 116 Fed. Cl. 276, 283 (2014).

(1)     **Good Faith**

"[T]he 'good faith' requirement of section 15(e)(1) is a subjective standard that focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Petitioners are entitled to a presumption of good faith. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996); *see also Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Respondent has not alleged a lack of good faith, and the undersigned finds no evidence that the petition was found in bad faith. Thus, the undersigned finds that the good faith requirement is met.

(2)     **Reasonable Basis**

There is no presumption that a claim was brought with a reasonable basis; rather, this must be affirmatively demonstrated by the petitioner. *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 304-05 (2011).

The determination of whether there is a reasonable basis for a claim is "an objective inquiry unrelated to counsel's conduct." *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see also Turner*, 2007 WL 4410030, at *6 (*citing Di Roma*, 1993 WL 496981, at *1) ("In contrast to the subjective standard afforded the 'good faith' requirement, the 'reasonable basis' requirement 'is objective, looking not at the likelihood of success [of a claim] but more to the feasibility of the claim'"). "[T]here must be a 'reasonable basis *for the claim* for which the petition was brought before the special master may exercise her discretion in awarding attorneys' fees." *Simmons*, 875 F.3d at 636 (citing Vaccine Act § 15(e)(1)) (emphasis in original).

In *Simmons*, petitioner contacted counsel in August 2011 concerning an alleged vaccine-related injury from an October 26, 2010 vaccination. *Simmons*, 875 F.3d at 634. Following that conversation, counsel was unable to contact petitioner for over two years and in March 2013 notified petitioner that their attorney-client relationship had been terminated. *Id.* On October 17, 2013, petitioner again contacted counsel and

8

stated he would like to move ahead with his petition.  *Id.*  After speaking with petitioner one more time, counsel filed a petition on October 22, 2013 without any medical records or other supporting evidence.  *Id.*  Counsel again lost contact with petitioner and was unable to file medical records, and the petition was dismissed for failure to prosecute. *Id.*  Petitioner's counsel then moved for attorneys' fees and costs.  *Id.*  The special master awarded attorneys' fees, and on motion for review, the Court of Federal Claims reversed the special master's decision and found that there was not a reasonable basis for the claim.  *Id.*

The Federal Circuit affirmed, stating that "[w]hether there is a looming statute of limitations deadline . . . has *no bearing* on whether there is a reasonable factual basis 'for the claim' . . . . [which] is an objective inquiry unrelated to counsel's conduct." *Simmons*, 875 F. 3d at 636 (emphasis added); *see also James-Cornelius v. Sec'y of Health & Human Servs.*, No. 17-1616, 2019 WL 1039911, at *3 (Fed. Cl. Spec. Mstr. Feb. 4, 2019) (*citing Simmons*) ("The fact that the statute of limitations [may be] about to expire [does] not excuse counsel's obligation to show he had some basis for the claim beyond his conversation with the petitioner").

"[I]n deciding reasonable basis the Special Master needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence."  *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018).  Thus, the undersigned reviews the record for objective evidence supporting the required elements of petitioner's claim.  *See Highland v. Sec'y of Health & Human Servs.*, No. 17-1333V, 2018 WL 3991271, at *3 (Fed. Cl. July 30, 2018) (denying motion for review of special master's decision and determining that special master properly "examined the record for objective evidence supporting the required elements of petitioner's claim").

"[W]hile petitioner must furnish 'some evidence' supporting the claims in the petition, the evidentiary showing is less than a preponderance of the evidence."  *Miller v. Sec'y of Health & Human Servs.*, No. 13-914V, 2016 WL 2586700 (Fed. Cl. Spec. Mstr. Apr. 12, 2016); *see also Curran v. Sec'y of Health & Human Servs.,* 130 Fed. Cl. 1, 5 (2017) (*quoting Chuisano*, 116 Fed. Cl. at 288) ("Though the petitioner's burden to establish a reasonable basis is lower than the preponderance of the evidence standard the plaintiff must establish to recover on the merits of the claim, a petitioner 'must furnish some evidence in support' of the claim").  "Reasonable basis 'looks not at the likelihood of success' but rather 'the feasibility of the claim.'"  *Woolf v. Sec'y of Health & Human Servs.*, No. 17-908V, 2019 WL 2498774, at *5 (Fed. Cl. Spec. Mstr. May 23, 2019) (*citing Chuisano*, 116 Fed. Cl. at 286).

"[T]o establish a reasonable basis for a claim, petitioner [must] adduce medical evidence going to causation beyond temporal proximity."  *Bekiaris v. Sec'y of Health & Human Servs.*, 140 Fed. Cl. 108, 115 (2018); *see also Harding v. Sec'y of Health & Human Servs.*, No. 17-1580, 2019 WL 3215974, at *2 (Fed. Cl. Spec. Mstr. June 18, 2019) ("A petitioner must furnish some evidence in support of the claim"); *Everett v.*

*Sec'y of Health & Human Servs.*, No. 91-1115V, 1992 WL 35863 (Fed. Cl. Spec. Mstr. Feb. 7, 1992) ("[T]o have a 'reasonable basis,' a claim must, at a minimum, be supported by medical records or medical opinion").

### B.   Whether Petitioner Had a Reasonable Basis to File the Claim

In this case, the undersigned determines that there was a reasonable basis to assert a vaccine-related shoulder injury caused by a December 2014 flu vaccination.

As instructed by *Simmons*, the undersigned reviews the evidence to determine whether it provided a reasonable factual basis for the claim asserted. In this case, the original petition asserted a claim that petitioner suffered "left shoulder injuries" from an influenza vaccination "received in December of 2014." Petition at 1 (ECF No. 1). It alleged that petitioner experienced pain in his left shoulder "[i]mmediately following the vaccination." *Id.* at ¶¶ 3-4. The petition further alleged that petitioner's injuries "were caused in fact by the influenza vaccine in his left shoulder in December of 2014." *Id.* at ¶ 23.

### (1)   Claim based on December 2014 Flu Vaccine

The first issue is whether there was a reasonable basis to assert a claim at all for a December 2014 flu vaccination. At the time of filing, petitioner had evidence indicating that petitioner's flu vaccine was administered on October 3, 2014. However, the undersigned notes that in several medical records, petitioner related his shoulder pain to a December 2014 flu vaccination. Pet. Ex. 1 at 43, 228-30, 234-35. "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." *Cucuras v. Sec'y of Health & Human Servs.,* 993 F.2d 1525, 1528 (Fed. Cir. 1993).

The fact that a vaccine was administered does not necessarily require medical evidence. In *Wonish v. Sec'y of Health & Human Servs.*, No. 90-667V, 1991 83959, at *4 (Fed. Cl. Spec. Mstr.), a special master stated, "[i]t seems obvious that not all elements must be established by medical evidence . . . . Vaccination is an event that in ordinary litigation could be established by lay testimony. Medical expertise is not typically required." *See also Woodson v. Sec'y of Health & Human Servs.*, No. 91-263V, 1992 WL 59707, at *2 (Fed. Cl. Spec. Mstr. Mar. 5, 1992) (noting that "[t]he petition should not be dismissed *as a matter of law*, merely because there is no documentary evidence that the vaccination took place and [petitioner] is the only witness claiming personal knowledge of the vaccination"). That a vaccine was administered, and when it was administered, do not necessarily need to be evidenced by contemporaneous documentation. *See, e.g., Centmehaiey v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 612, 621 (1995), *aff'd* 73 F.3d 381 (Fed. Cir. 1995) ("The

lack of contemporaneous, documentary proof of a vaccination, however, does not necessarily bar recovery).

"[T]he petitioner's burden to establish a reasonable basis is lower than the preponderance of the evidence standard the plaintiff must establish to recover on the merits of the claim." *Johnsen v. Sec'y of Health & Human Servs.*, No. 15-1219V, 2018 WL 1833424, at *5 (Fed. Cl. Spec. Mstr. Jan. 17, 2018); *see also Chuisano*, 116 Fed. Cl. at 286-87 (discussing burden petitioners must meet to establish a reasonable basis and stating, "[t]his burden is something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim"). In this case, even if there was not sufficient evidence to recover on the merits of the claim, based on the existence of medical records indicating that a vaccine related to the asserted injury was administered in December 2014 the undersigned determines that there was a reasonable basis for asserting a claim for a vaccination on that date.

### (2)   Claim for Vaccine-related Injury

The undersigned determines that petitioner had a reasonable basis to file a causation in fact claim for shoulder injuries resulting from a December 2014 flu vaccination.  In *Althen v. Sec'y of Health and Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005), the Federal Circuit explained the standard for such cases as follows:

> Concisely stated, Althen's burden is to show by preponderant evidence that the vaccination brought about her injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of proximate temporal relationship between vaccination and injury.  If Althen satisfies this burden, she is "entitled to recover unless the [government] shows, also by a preponderance of the evidence, that the injury was in fact caused by factors unrelated to the vaccine.

*Id.* at 1278.

The petitioner's burden to establish a reasonable basis is a lower standard than the preponderance of the evidence standard needed to establish entitlement.  *Johnsen*, 2018 WL 1833424, at *5.  The undersigned determines that there was sufficient evidence to establish a reasonable basis for an *Althen* claim for a shoulder injury from a December 2014 flu vaccination.

### (a)    *Althen* Prong One

As to the first *Althen* prong, a medical theory causally connecting the vaccination and the injury, shoulder injury related to vaccine administration has been added to the Vaccine Injury Table as a Table injury.  Even if petitioner's case may not have received a presumption of causation as a Table case, the fact that a shoulder injury from administration of a vaccine is a Table injury provides a medical theory supporting petitioner's claim.

### (b)    *Althen* Prongs Two and Three

There is considerable overlap with respect to the evidence and precedent involved in analyzing the second and third *Althen* factors.  Thus, they are analyzed together.  The undersigned determines that, at the time of filing there was sufficient evidence to establish a reasonable basis that petitioner could establish a logical sequence of cause and effect showing that a December 2014 vaccination was the reason for petitioner's left shoulder injury (second prong of *Althen*) and establish a proximate temporal relationship between the vaccine and the injury (third prong of *Althen*).

Respondent emphasizes the eight-month gap between petitioner's October 3, 2014 vaccination and his first report of shoulder pain on June 2, 2015.  However, the claim asserted in the original petition was for a flu vaccination in December 2014, not an October 3, 2014 vaccination.  Pursuant to *Simmons*, in determining reasonable basis it is proper to examine the *claim asserted in the petition*.  The petition asserted a claim for a December 2014 vaccination, making the gap between the asserted vaccination and the first report of shoulder pain six months rather than eight months.

In *Cooper v. Sec'y of Health & Human Servs.*, No.  17-114V, 2018 WL 8188435, at *6 (Fed. Cl. Spec. Mstr. Aug. 3, 2018), the undersigned found that the onset of a shoulder injury occurred within 48 hours of vaccination even though petitioner did not seek treatment of her shoulder injury until six months after vaccination.  In addition, the undersigned has found onset within 48 hours in cases where petitioners did not seek medical care for four months.  *See Almanzar v. Sec'y of Health & Human Servs.*, No. 16-340, 2017 WL 8220616 (Fed. Cl. Spec. Mstr. Dec. 21, 2017) (finding onset within 48 hours when petitioner first sought treatment 4 months after vaccination; *Towne v. Sec'y of Health & Human Servs.*, No. 16-1116, 2018 WL 4612957 (Fed. Cl. Spec. Mstr. June 19, 2018) (finding onset of shoulder injury within 48 hours in a case where petitioner first sought treatment four months after vaccination and initially attributed symptoms to another cause).  Thus, at the time of filing, there was a reasonable basis for petitioner to assert a claim that a December 2014 flu vaccination caused a shoulder injury that he did not report until six months later.

Respondent also places weight on the fact that petitioner had numerous medical encounters between the October 2014 vaccination and June 2, 2015 without reporting

shoulder pain.  The most significant encounter during that time occurred on October 23, 2014, when petitioner was seen by his primary care physician and did not report shoulder pain but did report engaging in extensive physical labor that would have required the use of his shoulders.  However, the claim asserted in the petition was for a December 2014 vaccination.  If petitioner had been able to establish that he received his flu vaccine in December 2014, then the October 23, 2014 appointment would have occurred prior to vaccination and would have held less significance.

The medical records demonstrate that between December 2014 and June 2, 2015 petitioner was seen by dental, dermatology, and ophthalmology health care providers and did not report shoulder pain.  There is no record of a visit with his primary care physician or orthopedist during this timeframe and, from a review of the records, he appears not to have seen any health care providers between March 19 and June 2, 2015.

In *Cooper*, during the six-month gap between vaccination and the petitioner's first medical appointment for shoulder pain, she was seen for an annual gynecological examination and the record indicated she did not report shoulder pain at this appointment.  *Cooper*, 20018 WL 8188435, at *6-7.  The undersigned found that while "[a]n intervening medical appointment without mention of the ongoing shoulder injury could cast doubt on petitioner's claim," in that case it did not because, inter alia, the appointment was not with a primary care physician but with a specialist "unrelated to orthopedics or any other relevant specialty, and there [was] no evidence to suggest any musculoskeletal exam was conducted."  *Id*.

Petitioner's medical care between the vaccination date in the petition and his first report of a shoulder injury is similar to that in *Cooper*.  In this case, during the six-month gap between the vaccination date in the petition and petitioner's first report of shoulder pain, the petitioner was seen only by health care providers who, based on their specialty or practice, one would generally not consult for the evaluation or treatment of shoulder, musculoskeletal, or orthopedic ailments.  In *Cooper*, the specialist was a gynecologist.  In this case, petitioner received care from dental, dermatology, and ophthalmology providers.  In the experience of the undersigned reviewing medical records of health care providers in these fields, providers in these specialties generally do not inquire about, evaluate, or treat shoulder injuries.  Therefore, the fact that petitioner was seen by providers in these specialties and did not report shoulder pain does not call into question the reasonableness of the basis of his claim.

Thus, at the time of filing of the petition, there was sufficient evidence to establish a reasonable basis for a claim that petitioner received a flu vaccine in December 2014 and suffered a shoulder injury from the vaccination.  That petitioner did not seek treatment for the injury until six months later and did not report the injury to dental, dermatology, or ophthalmology care providers would not necessarily have defeated his claim.  Therefore, there was a reasonable basis for an *Althen* claim based on a December 2014 vaccination date.

13

### V.     Award of Attorneys' Fees

### A.     Legal Standard

The Vaccine Act permits an award of reasonable attorneys' fees and costs.
§ 15(e).  Counsel must submit fee requests that include contemporaneous and specific
billing records indicating the service performed, the number of hours expended on the
service, and the name of the person performing the service.  *See Savin v. Sec'y of
Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008).  Counsel should not include in
their fee requests hours that are "excessive, redundant, or otherwise unnecessary."
*Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting
*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  It is "well within the special master's
discretion to reduce the hours to a number that, in [her] experience and judgment, [is]
reasonable for the work done."  *Id.* at 1522.  Furthermore, the special master may
reduce a fee request *sua sponte*, apart from objections raised by respondent and
without providing a petitioner notice and opportunity to respond.  *See Sabella v. Sec'y of
Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009).  A special master need not
engage in a line-by-line analysis of petitioner's fee application when reducing fees.
*Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

The petitioner "bears the burden of establishing the hours expended, the rates
charged, and the expenses incurred."  *Wasson v. Sec'y of Health & Human Servs.,* 24
Cl. Ct. at 482, 484 (1991).  He "should present adequate proof [of the attorneys' fees
and costs sought] at the time of the submission."  *Id.* at 484 n.1.  Petitioner's counsel
"should make a good faith effort to exclude from a fee request hours that are excessive,
redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is
obligated to exclude such hours from his fee submission."  *Hensley*, 461 U.S. at 434.

In this decision, the undersigned finds that petitioner brought this claim in good
faith and with a reasonable basis.  Thus, petitioner is entitled to reasonable attorneys'
fees and costs.

### B.     Discussion

Petitioner's January 14, 2019 motion requests attorneys' fees in the amount of
$9,647.50 in attorneys' fees.  Pet. Mot. for Attorneys' Fees and Costs at 2 (ECF No. 24).
In petitioner's March 10, 2019 reply, petitioner added a request for $1,100.00 in fees
spent researching and preparing the reply.  Pet. Reply at 10 (ECF No. 27).

### (1)      Hourly Rates

Petitioner requests hourly rates for work performed by Shealene Mancuso in 2018 and 2019 in excess of the rates that have previously been awarded for those years.  The undersigned reduces the requested rates to those previously awarded for those years, as follows:

| Year | Requested Rate | Previously Awarded Rate |
|:----:|:--------------:|:-----------------------:|
| 2017 | $225 | $225 |
| 2018 | $250 | $233 |
| 2019 | $275 | $250 |

This results in a reduction of the attorneys' fees requested in the amount of $78.20 for 2018 and $15 for 2019, for a total reduction of $93.20.

### (2)      Administrative Time

Upon review of the billing records submitted, it appears that a number of entries are for tasks considered clerical or administrative. In the Vaccine Program, secretarial work "should be considered as normal overhead office costs included within the attorneys' fee rates."  *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989); *Dingle v. Sec'y of Health & Human Servs.*, No. 08-579V, 2014 WL 630473, at *4 (Fed. Cl. Spec. Mstr. Jan. 24, 2014).  "[B]illing for clerical and other secretarial work is not permitted in the Vaccine Program."  *Kerridge v. Sec'y of Health & Human Servs*., No. 15-852V, 2017 WL 4020523, at *3 (Fed. Cl. Spec. Mstr. July 28, 2017) (citing *Rochester*, 18 Cl. Ct. at 387). A total of 3.3 hours was billed by Maximillian Muller, Stacie Bole, Michelle Coles, and Stacey Bowman on 9/18/17, 11/6/17, 11/13/17, 11/29/17, 12/13/17, 1/4/18, 1/17/18, and 4/30/18 on tasks considered administrative including reviewing and organizing the client file, processing invoices, scanning, and mailing documents.  This results in a reduction of $482.50.

### (3)      Petitioner's Additional Fee Request for Reply Concerning Fees and Costs Motion

In petitioner's reply to respondent's opposition to the fee motion, petitioner's counsel added to the initial fee request a request for "attorneys' fees of $1,100.00 incurred in order to research and prepare the instant motion that was precipitated by Respondent's counsel and/or her client."  Pet. Reply at 10.

Petitioner's reply was unhelpful to the undersigned in evaluating whether there was a reasonable basis for the claim and ignored binding precedent that was contrary to the arguments raised by petitioner.  Thus, the undersigned declines to award fees for the reply.

Petitioner's reply largely ignored the Federal Circuit's 2017 decision in *Simmons*,

15

and invited the undersigned to do so as well.  Throughout the reply, petitioner asserted that the undersigned should find a reasonable basis for the claim based on "the attorneys' conduct, and the looming statute of limitations as counsel understood it at the time of filing."  Pet. Reply at 5-6; *see also* Pet. Reply at 7 ("The reasonable basis standard should be flexible enough to allow special masters and judges to consider other factors – such as the conduct of the attorney or a pending statute limitations deadline – in addition to the strength of the evidence to support a Vaccine Act claim"); Pet. Reply at 9 (detailing counsel's work on the case prior to filing and arguing that "given the medical records in support of a claim for which the Petition was filed, in addition to the looming statute of limitations [as] Petitioner believed it to be at the time based on the records, this Court should find that there was a reasonable basis for the claim in which the Petition was filed, and award attorneys fees").

Federal Circuit decisions are binding on special masters.  *See Guillory v. United States*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 Fed. Appx. 712 (Fed. Cir. 2004) (noting that special masters are not bound by their own decisions or by those from the Court of Federal Claims, other than in the same case on remand, but that special masters and the court "are bound, however, by the decisions of the United States Court of Appeals for the Federal Circuit").  Thus, the undersigned is bound by the Federal Circuit's decision in *Simmons*.

In *Simmons*, the Federal Circuit rejected the very arguments made by petitioner in this case, that the conduct of counsel or a looming statute of limitations deadline were relevant factors in assessing whether there was a reasonable basis for a claim.  The Federal Circuit stated, "[w]hether there is *a looming statute of limitations deadline, however, has no bearing* on whether there is a reasonable factual basis 'for the claim' raised in the petition.  That is an objective inquiry *unrelated to counsel's conduct*."  *Simmons*, 875 F.3d at 636 (emphases added).  Petitioner's counsel made no effort to distinguish *Simmons*, or even to acknowledge that the Federal Circuit recently rejected the very arguments raised by petitioner.

Because petitioner's reply improperly ignored binding Federal Circuit precedent and asserted that there was a reasonable basis for the claim based on prohibited factors, petitioner is not entitled to fees for researching and filing the reply.[5]

---

[5] In addition, in the reply, petitioner's counsel repeatedly cited a looming statute of limitations "as counsel understood it at the time."  Pet. Reply at 5-6 ("based on the fact that Petitioner filed medical records to support a post-vaccination injury, the attorneys' conduct, and the looming statute of limitations *as counsel understood it at the time of filing*"; Pet. Reply at  9 ("Petitioner contacted counsel on August 28, 2017, approximately three (3) months prior to the running of the statute of limitations *as counsel understood it at the time of filing of the petition*"; "in addition to the looming statute of limitations *[as] Petitioner believed it to be at the time*") (emphases added).  To the extent that counsel suggests that a misunderstanding of the law by counsel can support reasonable basis, the undersigned disagrees.  *See Somosot v. Sec'y of Health & Human Servs.*, No. 13-710V, 2014 WL 653659, at *7 (Fed. Cl. Spec. Mstr. Oct. 31, 2014), *mot. for rev. denied*, 120 Fed. Cl. 716 (2015) ("Petitioner's misunderstanding of the applicable legal standard relating to section 16(a)(2) (when the statute of limitations begins to run) does not make the filing of their petition reasonable").

## VI.    Attorney Costs

In the fee motion, petitioner requested $450.00 in fees incurred by counsel, consisting of $50.00 for a process server and the $400.00 filing fee.  In accordance with General Order #9, petitioner's counsel represents that petitioner incurred no out-of-pocket expenses (ECF No. 18-1).  The undersigned finds these costs reasonable.

## VII.    Conclusion

Based on the reasonableness of petitioner's request, the undersigned **GRANTS** petitioner's motion for attorneys' fees and costs in part.

**Accordingly, the undersigned awards the total of $9,521.80[6] as a lump sum in the form of a check jointly payable to petitioner and petitioner's counsel Shealene Mancuso.**

The clerk of the court shall enter judgment in accordance herewith.[7]

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master

---

[6] This amount is intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein.  *See generally Beck v. Sec'y of Health & Human Servs.,* 924 F.2d 1029 (Fed. Cir. 1991). The amount was calculated starting with the requested attorney fees of $10,747.50 and requested attorney costs of $450.00, subtracting $93.20 due to adjusted hourly rates for 2018 and 2019 for Ms. Mancuso, subtracting $482.50 for administrative tasks, subtracting $1,100.00 for the reply.

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.