# In the United States Court of Federal Claims

No. 17-1800V
(Filed: December 6, 2019)
(Re-filed: January 6, 2020)[1]

* * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| MIGUEL GOMEZ, | National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa; Attorneys' Fees and Costs; Reasonable Basis for Filing Petition |
| *Petitioner*, | |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| *Respondent*. | |

* * * * * * * * * * * * * * * * * * * *

*Shealene P. Mancuso*, Dresher, PA, for petitioner.

*Daniel A. Principato*, United States Department of Justice, Vaccine/Torts Branch, Civil Division, Washington, DC, for respondent, with whom was *Alexis B. Babcock*, Assistant Director, *Catharine E. Reeves*, Deputy Director, *C. Salvatore D' Alessio*, Acting Director, and *Joseph H. Hunt*, Assistant Attorney General.

## OPINION

BRUGGINK, *Judge.*

This case is before the court on a motion by respondent for review of the Chief Special Master's decision awarding attorneys' fees and costs to Miguel Gomez, who filed a petition under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa–1 to –34 (2012), after receiving

---

[1] This opinion was held open for fourteen days during which the parties could propose to chambers any appropriate redactions. The parties conferred and did not propose any redactions of protected information. Rules of the United States Court of Federal Claims, App. B, Rule 18(b) ("Vaccine Rules").

an influenza ("flu") vaccine. The question on review is a novel one: Whether petitioner had a reasonable basis to file a petition based on a December 2014 flu vaccination when the vaccination records submitted along with the petition show that the actual vaccination occurred on October 3, 2014?

Along with the petition, petitioner filed two sets of medical records from the Sacramento Department of Veterans Affairs ("VA") Medical Center and an affidavit stating that he received a flu vaccination in December of 2014. Although petitioner believed that he received the vaccination in December of 2014, a document titled "Health Summaries," submitted at the time of filing, lists petitioner's vaccination records and shows that he actually received the vaccination on October 3, 2014, more than three years prior to filing his petition. The Chief Special Master dismissed his claim as untimely on June 25, 2018. On January 14, 2019, petitioner filed a motion seeking attorneys' fees and costs. Respondent opposed any award and argued that petitioner's claim lacked a reasonable basis at the time it was filed.

On August 9, 2019, the Chief Special Master found that petitioner had a reasonable basis to file his claim and awarded attorneys' fees and costs. Respondent moved for review of the Chief Special Master's decision on September 6, 2019. The motion is fully briefed, and oral argument was held on November 13, 2019. Because we find that petitioner had reason to know the petition was untimely at the time of filing, we grant respondent's motion for review and reverse the Chief Special Master's award of attorneys' fees and costs.

FACTUAL BACKGROUND

On October 3, 2014, petitioner received a flu vaccination at a VA Medical Center in California. Between October 3, 2014 and June 2, 2015, petitioner sought dental, dermatology, and vision treatment at the VA Medical Center on various occasions. During these visits, petitioner did not report any shoulder pain.

On June 2, 2015, petitioner presented to a primary care physician ("PCP") at the VA Medical Center and reported left shoulder pain. Petitioner's PCP diagnosed him with probable rotator cuff tendonitis and prescribed Tramadol. A few months later, on September 22, 2015, petitioner returned to his PCP and continued to complain about left shoulder pain. The PCP again diagnosed him with probable rotator cuff tendonitis and continued petitioner's Tramadol prescription.

On November 12, 2015, petitioner once again met with a PCP at the

2

VA Medical Center, complaining of left shoulder pain. During this visit, petitioner reported that the shoulder pain began 11 months earlier, after he received a flu shot in December of 2014. Petitioner reported to the PCP that he "started having pain at the s[ite] of the injection and [that it] went down on the medial side of the elbow, all the way to the wrist." Pet'r's Ex. 1-5 at 235. The PCP diagnosed petitioner with rotator cuff tendonitis, ordered x-rays of petitioner's left shoulder, and referred petitioner to an orthopedic specialist. Petitioner saw an orthopedic surgeon on November 24, 2015, complaining of "pain in the [left] shoulder radiating to the lateral neck and down the arm to the hand." Id. at 230–31. The orthopedic surgeon diagnosed petitioner with left shoulder impingement syndrome with calcific tendonitis. That same day, petitioner underwent a cervical spine x-ray, where he reported to the surgeon that his shoulder pain began after a flu vaccination in December of 2014.

On December 3, 2015, petitioner presented for a physical therapy evaluation at the VA Medical Center, complaining of the same shoulder pain. Petitioner reported to the physical therapist that he believed a December 2014 flu vaccination caused the shoulder pain, which had "gradually got[ten] worse and worse." Id. at 229.

On January 6, 2016, petitioner met with an orthopedic surgeon, complaining of ongoing left shoulder pain. Petitioner noted pain "radiat[ing] from the back of his neck, down the outer upper arm, into the dorsal forearm and hand." Id. at 226. Petitioner received a steroid injection. A few weeks later, on January 27, 2016, petitioner again reported to the orthopedic surgeon, stating that the steroid injection had not helped, and that he was still in pain and experiencing reduced range of motion. Petitioner was diagnosed with "[l]eft shoulder adhesive capsulitis, diabetic type," and a "[p]robable rotator cuff tear [of the] left shoulder." Id. at 224. On April 5, 2016, petitioner returned to the orthopedic surgeon, reporting continued left shoulder pain and "state[d] that the pain started after a flu shot last fall." Id. at 211.

On May 11, 2016, petitioner again visited an orthopedic surgeon, who "concluded that [petitioner] would need surgical release of his severe diabetic type adhesive capsulitis." Id. at 207. During his next visit, on August 5, 2016, petitioner complained of 20 months of shoulder pain "correlate[d] onset with flu shot." Id. at 182. The orthopedic surgeon recommended manipulation under anesthesia with arthroscopic debridement, which petitioner reportedly received on October 28, 2016. Petitioner presented for two post-surgery follow up appointments with an orthopedic surgeon on November 15, 2016 and December 13, 2016, and one post-surgery follow up with a PCP on July 5, 2017.

3

PROCEDURAL BACKGROUND

On November 16, 2017, petitioner filed a petition seeking compensation under the Vaccine Act, alleging that he suffered left shoulder injuries following a flu vaccination in December of 2014. Along with the petition, he filed two sets of medical records from the VA Medical Center in California and an affidavit stating that he received a flu vaccination "in his left shoulder in December of 2014." Pet'r's Ex. 1 ¶ 2. The records submitted at the time of filing included a vaccination record titled "Health Summaries" indicating that petitioner received the flu vaccination on October 3, 2014. There was no indication of a subsequent flu vaccination.

On November 17, 2017, petitioner filed a motion to subpoena his outstanding vaccination records from the Sacramento VA Medical Center. Upon receiving the vaccination records on March 2, 2018, petitioner realized that he had not received the vaccination in December of 2014, but rather on October 3, 2014. The document titled "Health Summaries" that petitioner received by subpoena from the Sacramento VA Medical Center is identical to the "Health Summaries" filed as part of the medical records with his original petition. *Compare* Pet'r's Ex. 2 at 109 *with* Ex. 4-1. That same day, petitioner filed an Amended Petition alleging left shoulder injuries from a flu vaccine received on October 3, 2014.

Realizing that his claim was time-barred and that he was not entitled to compensation, petitioner moved to dismiss his claim on June 13, 2018. The Chief Special Master dismissed the case, finding that the record did not contain medical records to demonstrate a vaccine-related injury and that the claim was untimely under the Vaccine Act's 36-month statute of limitations.

Petitioner filed a motion seeking attorneys' fees and costs on January 14, 2019, requesting fees in the amount of $9,647.50 and costs in the amount of $450, totaling $10,097.50.[2] Respondent opposed any award of attorneys' fees and costs, arguing that petitioner lacked a reasonable basis for filing the petition.

On August 9, 2019, the Chief Special Master determined that "there

---

[2] In his reply, petitioner added a request for $1,100.00 in additional attorney's fees for researching and preparing the reply, making the total request $11,197.50.

was sufficient evidence to establish a reasonable basis for a claim that petitioner received a flu vaccine in December 2014 and suffered a shoulder injury from the vaccination." Decision on Attorneys' Fees and Costs ("Fee Decision") at 13. Despite noting that petitioner filed vaccination records indicating the receipt of a vaccination on October 3, 2014 along with his original petition, the Chief Special Master concluded that "based on the existence of medical records indicating that a vaccine related to the asserted injury was administered in December 2014 [the court] determines that there was a reasonable basis for asserting a claim for a vaccination on that date." *Id.* at 11. On September 6, 2019, respondent moved for review of the Chief Special Master's decision to award attorney's fees and costs.

Respondent argues that (1) the Chief Special Master applied an incorrect legal standard by focusing on a non-existent December 2014 vaccination, which did not appear in the Amended Petition, and thus failed to base her decision on objective evidence; (2) the Chief Special Master's *Althen* analysis was an abuse of discretion; and (3) policy and practical considerations weigh against upholding the Chief Special Master's decision. Because we find that there was not objective evidence to support the decision, we grant respondent's motion for review, reverse the decision, and find no need to consider the *Althen* analysis or policy considerations.

## DISCUSSION

Upon review, the court may take one of the following actions: (1) uphold the special master's findings of fact and conclusions of law and sustain the special master's decision; (2) set aside some or all of the special master's findings of fact and conclusions of law and issue different findings of fact and conclusions of law; or (3) remand the petition for further action in accordance with the court's direction. 42 U.S.C. § 300aa–12(e)(2)(A)–(C); Vaccine Rule 27. The court may set aside a special master's findings of fact or conclusions of law only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 300aa–12(e)(2)(B). To find that a special master's decision was an abuse of discretion, a court must conclude that the decision was: "(1) . . . clearly unreasonable, arbitrary, or fanciful; (2) . . . based on an erroneous conclusion of the law; (3) . . . clearly erroneous; or (4) the record contains no evidence upon which the [special master] could have based [their] decision." *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Hendler v. United States*, 952 F.2d 1364, 1380 (Fed. Cir. 1991)).

Under the Vaccine Program, even an unsuccessful petitioner may be awarded attorneys' fees and costs "if the special master or court determines

5

that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa–15(e)(1). The special master's decision on whether to award attorneys' fees and costs is discretionary and, thus, reviewed under an abuse of discretion standard. *Saunders v. Sec'y Dep't Health & Human Servs.,* 25 F.3d 1031, 1033 (Fed.Cir.1994). "Good faith" and "reasonable basis" are two separate elements; "good faith" being a subjective inquiry and "reasonable basis" being an objective inquiry. *Simmons*, 875 F.3d at 635 (citations omitted). Respondent does not dispute that petitioner had a good faith basis to file his claim, and the Chief Special Master found no evidence that the petition was filed in bad faith. Therefore, the good faith requirement is met. We turn now to whether petitioner had a reasonable basis to file his claim.

The Federal Circuit has held that the "reasonable basis" requirement is "an objective inquiry unrelated to counsel's conduct." *Simmons*, 875 F.3d at 636. Moreover, the objective inquiry "look[s] not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner v. Sec'y of Dep't of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) (quoting *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). "[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery."[3] *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). In addition, "[r]easonable basis requires assessing the totality of the circumstances going to the merits of the claim, including the factual basis of the claim, medical support, and jurisdictional issues." *Bekiaris v. Sec'y of Health & Human Servs.*, 140 Fed. Cl. 108, 112 (2018).

While a petitioner must produce some evidence supporting his claim to establish reasonable basis, the evidentiary burden is less than a preponderance of the evidence. *See Chuisano v. United States*, 116 Fed. Cl. 276, 283 (2014) (citations and internal quotations omitted). Reasonable basis has been established where a petitioner submits a sworn statement, medical records, and VAERS report which show that recovery is feasible. *Turner,* 2007 WL 4410030, *6 (citations omitted); *Turpin v. Sec'y Health & Human*

---

[3] "Under the Vaccine Act, the petitioner must allege that (1) the vaccine was administered in the United States; (2) the vaccinee suffered an injury from the vaccination lasting more than 6 months; (3) the injury is linked to the vaccination and, (4) the petitioner has not been compensated." *Id.* (citing 42 U.S.C. § 300aa-11(c)(1)).

*Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Human Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney).

On review, the Chief Special Master focused on whether there was a reasonable basis to assert a claim in reliance on an assumed December 2014 vaccination, ultimately concluding that "even if there was not sufficient evidence to recover on the merits of the claim," based on petitioner's medical records available at the time of filing there was a reasonable basis for asserting a claim for a December 2014 vaccination. Fee Decision at 11. In making this determination, the Chief Special Master noted that, in several of petitioner's medical records, he related his shoulder pain to a December 2014 vaccination. She provided that "[m]edical records, in general, warrant consideration as trustworthy evidence" and the fact "[t]hat a vaccine was administered, and when it was administered, do[es] not necessarily need to be evidenced by contemporaneous documentation." *Id.* at 10 (quoting *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *Centmehaiey v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 612, 621 (1995), *aff'd* 73 F.3d 381 (Fed. Cir. 1995)).

Respondent argues that the objective evidence irrefutably demonstrates now, and also demonstrated at the time of filing, that petitioner received his flu vaccination on October 3, 2014, not in December 2014 as alleged in the original petition. Respondent urges that petitioner's medical records are not objective evidence of a vaccine injury because they only record petitioner's own recollection of the injury and date of administration. According to respondent, "medical records in which a doctor records a medical history in which the historian reports an adverse reaction are not helpful," and a "layperson's recitation of a severe reaction is not elevated in status simply because a doctor memorialized it." Resp. Mot. at 11 (quoting *Frantz v. Sec'y of Health and Human Servs.*, No. 13-158V, 2019 WL 3713942, at *11 (Fed. Cl. Spec. Mstr. June 24, 2019), *motion for review filed* July 24, 2019 (internal emphasis and quotation marks omitted)).

Respondent also argues that, pursuant to the Vaccine Act, a Special Master is prohibited from finding in favor of petitioner "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." *Id.* (citing 42 U.S.C. § 300aa-13(a)(1)). As such, respondent alleges that the Chief Special Master failed to assess the factual basis of the claim, and rather focused "her reasonable basis analysis on an alternative fact

7

pattern not presented by the objective evidence."[4] Resp. Mot. at 9. Moreover, respondent argues that, according to the Federal Circuit in *Simmons*, the Special Master "should have limited her review to the claim alleged in the petition to determine if it was feasible based on the materials submitted[.]" *Id.* at 10 (citations omitted). By failing to limit her "reasonable basis" analysis to the claim alleged in the Amended Petition and ignoring the objective evidence establishing that petitioner received his vaccination on October 3, 2014, the Chief Special Master "applied the incorrect legal standard and erred as a matter of law." Resp. Mot. at 10, 11.

In response, petitioner explains that "vaccination records are often difficult, if not impossible to obtain" and that in order to subpoena his record from the VA Medical Center in California, petitioner needed to first file a petition. Pet'r's Opp. to Resp't Mot. for Review at 13 ("Pet.'s Opp."). Petitioner further argues that, based on the medical records at hand when the original petition was filed, a reasonable basis existed for a December 2014 vaccination date. Specifically, petitioner points to the reports of three separate treatment visits, in which he complained of left shoulder pain following a December 2014 flu vaccination. In petitioner's view, respondent's focus on the actual October 3, 2014 vaccination date is misplaced.

We agree with respondent, in part.[5] Although medical records warrant consideration as trustworthy evidence and the fact that a vaccine was administered need not be evidenced by contemporaneous documentation, in this case, petitioner's medical records consisting of his own statements to treating physicians regarding the injury and date of administration are inconsistent with the vaccination records filed with the petition. The Court of Federal Claims has found that "the requirements for a petition set forth in the Vaccine Act are relevant in deciding whether a petition . . . was reasonably filed in the first instance." *Simmons*, 128 Fed. Cl. 579, 583

---

[4] Respondent argues that the Chief Special Master relied on a "non-existent December 2014 vaccination in order to conclude that petitioner met his burden of establishing a reasonable basis." Resp. Mot. at 10.

[5] Respondent argues that inquiry is centered on the reasonableness of the Amended Petition. We disagree. The question focuses on the time of filing. It is not clear if respondent was aware that the materials accompanying the original filing conclusively showed no December vaccination, but instead an earlier October vaccination. In any event, if all that was available at the time of filing was a good faith, albeit ultimately flawed recollection of a timely vaccination, recorded in the medical records, we would agree with the decision below.

(2016). Under the Vaccine Act, a petition "shall contain . . . an affidavit, and supporting documentation, demonstrating" that the petitioner received a vaccination and sustained an injury, or *identify any records listed above that are unavailable to the petitioner and list the reason for their unavailability*. 42 U.S.C. § 300aa-11(c).

Here, petitioner provided a sworn affidavit stating that the vaccination occurred in December of 2014 along with medical records reflecting his own recollection of the injury and December 2014 vaccination; however, the vaccination records simultaneously submitted with the petition conclusively establish that the vaccination occurred on October 3, 2014. Although subjective recollections recorded in medical interviews are some evidence of a vaccination, we view them as different in kind, at least with respect to the issue of the timeliness of a petition, from official vaccinations records.

During oral argument, counsel suggested that there was a possibility that these vaccination records were incomplete at the time of filing the petition, thus counsel needed to file the petition on behalf of petitioner in order to subpoena the records. This notion is belied by the fact that petitioner's vaccination records were dated November 3, 2017, three years after the vaccination was recorded. Furthermore, after subpoenaing the records, petitioner received the same document that was filed with the original petition. Finally, petitioner failed to assert that the "complete" vaccination records were unavailable to him or list the reason for their unavailability in his original petition.

Petitioner's vaccination records contradict his recollection of a December 2014 vaccination. He thus knew or should have known that his claim was time-barred. As such, there was not at the time of filing, nor at the time of the Amended Petition, a reasonable basis for bringing a petition under the Vaccine Act. Moreover, petitioner's actions constitute a concession that the vaccination records are controlling against his own recollection as he moved to dismiss his claim on June 13, 2018 after receiving the same vaccination records demonstrating only an October 2014 vaccination. Therefore, we agree with respondent that there was not a reasonable basis for petitioner to file a claim based on a December 2014 flu vaccination and that the Chief Special Master erred as a matter of law.

## CONCLUSION

Accordingly, we grant respondent's motion for review and reverse the Chief Special Master's decision of August 9, 2019, awarding attorney's fees and costs. The Clerk is directed to enter judgment accordingly.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge
